**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**UNITED STATES OF AMERICA,**

**v.**                                         **1:15-cr-434-WSD**

**PAMELA MOZEE,**

　　　　　　　**Defendant.**

**<u>OPINION AND ORDER</u>**

This matter is before the Court pursuant to the 18 U.S.C. § 3142(f) detention

hearing held on March 21, 2017.

**I.      BACKGROUND**

   A.     <u>Background and Procedural History</u>

On December 7, 2015, Defendant Pamela Mozee ("Defendant") pleaded not

guilty to an eight-count indictment alleging that she mailed oxycodone and

hydrocodone on four different dates, in violation of 21 U.S.C. §§ 841 and 843.

The Government asserts that the evidence will show that, around 2013 and 2014,

Defendant mailed over sixty (60) packages of oxycodone or hydrocodone to an

individual in Alaska, in exchange for approximately $100,368.  The Government

claims Defendant obtained the controlled substances both from prescriptions she

received from doctors and from street dealers.  (See March 21, 2017, Detention

Hr'g Tr. ("Tr.")).

On December 7, 2015, Magistrate Judge Gerrilyn G. Brill issued an order

setting the conditions of Defendant's release pending trial.  ([7]).  The conditions

required, among other things, that Defendant (1) participate in a program of

inpatient or outpatient substance abuse therapy and counseling if directed by the

pretrial services office or supervising officer, (2) submit to mental health

evaluations, and (3) participate in mental health treatment or counseling if

recommended by pretrial services officers.  (Id.).

On August 24, 2016, Defendant's counsel filed a "Notice Regarding

Competency" [40], stating that a preliminary evaluation by psychiatrist Dr. Julie

Rand Dorney indicated that Defendant is not competent to stand trial.  On

September 9, 2016, the Court held a competency hearing.  Based on the evidence

presented at the hearing, the Court found, by a preponderance of the evidence, that

Defendant was "presently suffering from a mental disease or defect rendering her

unable to assist properly in her defense."  (September 9, 2016, Order [47]

("September 9th Order")).  The Court, adopting the requirements of 18 U.S.C.

§ 4241(d), ordered that Defendant be remanded to the custody of the Attorney

General to undergo a mental evaluation.  The Order stated:

2

> [T]he Court commits the defendant to the custody of the Attorney
> General for placement in a suitable facility . . . (1) **for a period, not
> to exceed four months**, to determine whether there is a substantial
> probability that in the foreseeable future she will attain the capacity to
> permit the proceedings to go forward; and (2) for an additional
> reasonable period of time until (A) her mental condition is so
> improved that the trial may proceed, if the Court finds that there is a
> substantial probability that within such additional period of time she
> will attain the capacity to permit the proceedings to go forward; or (b)
> the pending charges against her are disposed of according to law;
> whichever is earlier.

(September 9th Order at 1-2) (emphasis added).

On November 9, 2016, Defendant arrived at Federal Medical Center

Carswell ("FMC Carswell") in Fort Worth, Texas, for her evaluation.  On

March 3, 2017, Defendant's counsel notified the Court that Defendant will have

been in FMC Carswell for four months as of March 9, 2017.[1]

Section 4241(d)(1)(A) provides that a court may extend the four-month

period for an additional reasonable period of time "if the court finds that there is a

substantial probability that within such additional period of time [s]he will attain

the capacity to permit the proceedings to go forward."  18 U.S.C. § 4241(d)(1)(A).

Because the Court was not provided sufficient information to determine under

---

[1]     Defendant's counsel further stated that Defendant's treating physician at
FMC Carswell will issue the report of her findings to the Court "within two
weeks" of March 9, 2017, which is beyond the four month statutorily allowed
evaluation period.

Section 4241(d)(1)(A) that it may extend the time for the Attorney General to maintain custody of Defendant, on March 7, 2017, the Court issued its order for the Government to show cause why Defendant should not be ordered released from the custody of the Attorney General.  On March 9, 2017, one of Defendant's psychologists at FMC Carswell, Doctor Amor A. Correa, sent the Court a letter stating that Defendant suffers from schizophrenia, and that she will likely remain not competent to stand trial without receiving psychotropic medication, which she is unwilling to accept voluntarily.  (Ex. 2).  The letter stated that Defendant does not presently represent a danger to herself or others in the institution, and she thus cannot be forcibly medicated.  The letter requests the Court decide, under Sell v. United States, 539 U.S. 166 (2003), whether Defendant can be forcibly medicated to render her competent.

On March 9, 2017, the Court held a teleconference, during which the Court determined that the Government failed to provide sufficient evidence to allow the Court to extend the four-month commitment period under Section 4241(d)(1)(A), that Defendant should be transferred to Atlanta, and that the Court would hold both a detention hearing and a hearing pursuant to Sell.  On March 10, 2017, the Court issued its Order [56] releasing Defendant from the commitment, requiring the United States Marshals Service to return Defendant to Atlanta, and requiring that

4

Defendant be detained in an appropriate facility pursuant to 18 U.S.C. § 3142(e) pending a Section 3142(f) hearing.[2]

On March 21, 2017, the Court held a hearing, pursuant to Section 3142(f), regarding Defendant's detention.  The hearing was held to determine whether, given the information provided to the Court regarding Defendant's mental condition, Defendant constitutes a danger to certain individuals or the community and whether she poses a flight risk, such that continued pre-trial detention is appropriate.  Defendant was present at the hearing.[3]  A significant focus of the hearing was on whether Defendant, prior to her commitment, complied with the terms of her pre-trial release and her current capacity to control her conduct without her medication.[4]

---

[2]     On March 21, 2017, the Court issued its Corrected Opinion and Order [59] clarifying that Defendant's detention is pursuant to Section 3142(e), rather than 3142(d).

[3]     During the hearing, the Court also determined that it was Defendant's desire to have Regina Cannon take over sole representation of Defendant after a transitional period during which both Ms. Cannon and Defendant's current attorney, Colin Garrett, will represent Defendant.

[4]     If the Government's position is that Defendant did not comply with the terms of her pre-trial release, it may take whatever steps it deems appropriate to address those violations.

B.    Hearing Evidence and Testimony

Defendant's counsel argued that, prior to Defendant's commitment, she complied with the terms of release by, among other things, making all required court appearances, meeting with probation officers, not committing any crimes, and meeting with her licensed counselor.  (See Tr. 12).  Defendant's counsel explained that Defendant was late for only one hearing, which was due to transportation issues.  (Tr. 11).  Defendant's counsel also represents that Defendant's family has offered their support for Defendant, and that they will encourage her to abide by the terms of her release and to take her medication.  (See Tr. 57-58).  Defendant's counsel represents that Defendant's home remains available to her.  Defendant's counsel, and Defendant herself, also represent that Defendant will now take her medication.  (Tr. 58).

The Government argued generally that Defendant's mental condition and behavior have worsened and that she thus poses a threat to others or the community and that she is a flight risk.  In support of its argument, the Government presented several exhibits.  The Government's Exhibit 1 is an August 27, 2016, letter from Dr. Dorney to Defendant's counsel, in which Dr. Dorney opines regarding delusions Defendant suffers, which include delusions related to government investigators involved in her current offense.  Exhibit 2 is

6

the March 9, 2017, letter from Dr. Correa to the Court described above.  Exhibit 3 is a letter from Defendant to the Court, in which Defendant derogatorily characterizes her probation officer, Dennis Tudor.  (Ex. 3 at 1).  Exhibit 4 is a message, dated December 9, 2016, written by Defendant in which she accuses her counsel of being an "abusive lier [sic]," and "the devil," among other accusations.  (Ex. 4 at 1).  Defendant also stated that she believes her counsel and his investigator "tried to kill me on August 4, 2016."  (Id. at 3).  Exhibit 5 is Dr. Correa's March 21, 2017, final evaluation of Defendant, in which Dr. Correa described Defendant's delusions, which included that the nurses at FMC Carswell kill people and that her attorney "kidnapped" her to FMC Carswell in a conspiracy with postal inspectors, investigators, and probation officers who have sexually assaulted her and attempted to kill her.  (Ex. 5 at 8, 11).  The Dr. Correa opines that Defendant suffers from schizophrenia, currently in acute episode.  (Id. at 10).  She concludes that Defendant is unlikely to become competent to stand trial in the foreseeable future without psychiatric medication.  (Id. at 11).  The Government argues that Defendant's fear of the proceedings and individuals involved in them show she could fail to appear at trial.  (See Tr. 27-28).

The Government also called two witnesses, Tammie Boone and Dennis Tudor.  Ms. Boone and Mr. Tudor were formerly Defendant's probation officers.

7

Ms. Boone testified that she received the case on transfer from Mr. Tudor.  (Tr. 33).  She visited Defendant twice, once successfully and the other unsuccessfully.  (Tr. 33).[5]  During her successful visit on July 13, 2016, Defendant was upset and made several allegations toward individuals involved in her case, including agents, the inspector, and Mr. Tudor.  (Tr. 33-34).  She testified that, though Defendant made bizarre allegations, Defendant never threatened her or other probation officers.  (Tr. 36).  She testified that, over time, the allegations against her became more "intense," and that, after Defendant accused her and Mr. Tudor of "pulling a gun on [Defendant]," Ms. Boone was instructed by her supervisor to cease contact with Defendant.  (Tr. 37).  Ms. Boone testified that she felt Defendant's conduct was "growing and increasing to the point that concerned me for my safety."  (Tr. 38).

Mr. Tudor was Defendant's probation officer from January 8, 2016, through June 30, 2016.  (Tr. 39).  He testified that Defendant was generally cooperative during his visits with her.  (Tr. 41).  He related that he found out from a prior officer that Defendant had brass knuckles in her home, and that, after speaking

---

[5]     On the unsuccessful attempt, Defendant did not answer the knock at her door but, after Ms. Boone left, Defendant texted her with comments that suggested she knew Ms. Boone had just visited.  (Tr. 35).

with her and her attorney, the brass knuckles were removed from her home by Defendant.  (Tr. 42).  He testified that Defendant never threatened him with the brass knuckles.  (Tr. 42).  Mr. Tudor also testified that, after his visits, Defendant often sent him e-mails or text messages containing various allegations, including that he had had inappropriate contact with Defendant.  (Tr. 42-43).  Because of these allegations, Mr. Tudor began taking another officer with him during his visits.  (Tr. 42).  Because of Defendant's accusations and her discomfort with being supervised by a male officer, after June 30, 2016, Mr. Tudor transitioned the case to Ms. Boone.  (Tr. 43).  Mr. Tudor concluded by testifying that he never felt unsafe in Defendant's home.  (Tr. 44).

## II.    DISCUSSION

### A.    Legal Standard

The Bail Reform Act's default rule of release pending trial is reversed, and detention is presumed, for certain particularly dangerous defendants.  18 U.S.C. § 3142(e)(3); United States v. Quartermaine, 913 F.2d 910, 915 (11th Cir. 1990). If a defendant is charged with a crime of violence or a drug trafficking offense, it is presumed by the statute that no condition or combination of conditions will assure the appearance of the defendant or the safety of the community.  18 U.S.C. § 3142(e)(3).  Specifically, Section 3142(e)(3)(A) provides that a rebuttable

presumption arises if a court finds there is probable cause to believe the defendant committed "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.) . . . ." 18 U.S.C. § 3142(e)(3)(A)

Defendant is charged with drug trafficking offenses under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 843(b).  Section 841(b)(1)(C) provides a maximum term of imprisonment of 20 years.  Because Defendant is charged with a crime for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, there is a statutory presumption that she poses a danger to the community.  18 U.S.C. § 3142(e)(3).

 "Once the statutory presumptions are raised, the defendant carries the burden of production to come forward with evidence to rebut the presumptions." United States v. Quartermaine, 913 F.2d 910, 916 (11th Cir. 1990).  The defendant has the burden to produce evidence to suggest she is either not dangerous or not likely to flee if released on bail.  Id. (quoting United States v. King, 849 F.2d 485, 487 (11th Cir. 1988)).  Even if the defendant is able to rebut the presumption, the presumption "remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relative to factors listed in section

3142(g)." Id. (alterations omitted) (quoting King, 849 F.2d at 488).  The Bail

Reform Act provides the following guidelines:

> **(g) Factors to be considered**.—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>
> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence and involves a narcotic drug;
>
> (2) The weight of the evidence against the person;
>
> (3) The history and characteristics of the person, including
>
>> A. his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history and record concerning appearance at court proceeding; and
>>
>> B. whether, at the time of the current offense or arrest he was on probation, or parol, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).  The ultimate burden of persuasion remains with the

government to show (1) by clear and convincing evidence that the defendant

constitutes a danger to certain individuals or the community, or (2) by a

preponderance of the evidence that the defendant poses a flight risk.  See id. at 917.

     B.    <u>Analysis</u>

The Court finds Defendant presented sufficient evidence to rebut the statutory presumption.  Defendant's counsel shows that, prior to Defendant's commitment, she complied with the terms of release by, among other things, making all required court appearances, meeting with probation officers, not committing any crimes, and meeting with her licensed counselor.  Defendant's counsel explained that Defendant was late for only one hearing, which was due to transportation issues.[6]  Defendant's counsel also represents that Defendant's family has offered their support for Defendant, and that they will encourage her to abide by the terms of her release and to take her medication.  Defendant's counsel also represents that Defendant's home remains available to her.  That Defendant appears to have complied with the terms of her release while suffering from schizophrenia supports that she is not a danger to others or the community and that she does not pose a flight risk.

The Court also finds that the Government is unable to meet its ultimate burden to show (1) by clear and convincing evidence that the defendant constitutes

---

[6]    The Government did not offer evidence to contest this proffered statement.

a danger to certain individuals or the community, or (2) by a preponderance of the evidence that the defendant poses a flight risk.  With respect to Defendant's danger to individuals or the community, while the evidence shows that Defendant currently is experiencing an "acute episode" of her schizophrenia, the evidence, both expert and lay, consistently shows that, though Defendant makes outlandish accusations based on her delusions regarding individuals of authority involved in her criminal case, Defendant does not pose a risk to herself or others.  Though Ms. Boone testified that she ultimately feared for her safety, she also testified that Defendant never threatened her.  Mr. Tudor testified that he never felt unsafe in Defendant's home, and that Defendant complied with his request that she remove the brass knuckles she kept in her home.  There is no evidence to suggest Defendant may reengage in drug-trafficking conduct, and the fact that her family appears eager to monitor Defendant eases any such concern.

The Government's argument that Defendant's fear of her criminal proceedings and the individuals involved in them supports that Defendant poses a flight risk is undermined by other facts.  First, Defendant had this same fear before her commitment, yet managed to make all but one of her required appearances and meetings.  Second, that Defendant is elderly, appears to have a number of serious health conditions, (see Ex. 5 at 5), and uses a oxygen respirator supports a finding

that she is unlikely to pose a flight risk for the practical reason that it would be physically difficult for her to stray far from her home.  Finally, that Defendant's family now appears to be involved in ensuring her well-being and her compliance with the terms of her release further supports that Defendant does not pose a flight risk.  The Government did not present any specific evidence on the issue of Defendant's current risk of flight or risk to safety.  It relied on evidence of the unpredictability of Defendant's conduct when unmedicated.

Having weighed the evidence and the factors set forth in Section 3142(g), and Defendant's representation to the Court that she will now take the medicine prescribed for her, the Court finds that the Government fails to meet its burden to show either that Defendant constitutes a danger to certain individuals or the community or that she poses a flight risk.  The Court also agrees with counsel for Defendant that the competency evaluations done by Dr. Dorney and at FMC Carswell support that additional restrictions may well be appropriate.  (See Tr. 16).  In light of Defendant's repeated statements at the March 21, 2017, hearing that she will take her medications, including the psychotropic medications prescribed for her, and her family's commitment to monitor Defendant's conduct and to help her comply with the taking of her medication, the Court concludes she may be released

subject to specific limitations that address the concerns and conduct raised in the

competency evaluations performed by Dr. Dorney and at FMC Carswell.

## III.   CONCLUSION

Accordingly, and for the forgoing reasons,

**IT IS HEREBY ORDERED** that, the Government having failed to meet its

burden to show either that Defendant constitutes a danger to certain individuals or

the community or that she poses a flight risk, Defendant is released from the

custody of the United States Marshals Service.

**IT IS FURTHER ORDERED** that Defendant, upon release, is required to

comply with the following conditions:

A.   Defendant is restricted to her home and shall be on GPS monitoring, paid for
     at her expense.  She may leave her home only for the following purposes:

     1)   To attend scheduled medical appointments with a doctor, or
          healthcare professional providing care under a doctor's supervision.

     2)   To visit a hospital emergency room in the event of an emergency.

     3)   To attend a regularly scheduled religious service once a week.

     4)   To attend meetings with her counsel, Regina Cannon.

     5)   For any other reason pre-approved by Defendant's probation officer
          where the probation officer finds a sufficient necessity.

B.   Defendant is required to meet the following conditions to leave her home for the reasons stated above:

1)   She must give her probation officer at least 48 hours notice of each appointment, service, or meeting described in paragraphs 1 through 5 above, except if she must visit a hospital emergency room she is required to advise her probation officer, within 12 hours of her departure from the emergency room, of the reason for the visit and, if required, her discharge paperwork to verify the visit.

2)   She must be accompanied outside of her home by a family member and the person who will accompany her shall be listed in the email she is required to send in compliance with paragraph A above.

3)   She is required to travel using the most direct route to the allowed appointments, services, or meetings, and without intermediate stops.

C.   Defendant is further required to take the psychotropic medications most recently prescribed for her according to the prescription that applies to each medication.

D.   Any criticism, complaint or other claim about any person in the United States Probation Office that Defendant may wish to assert shall be asserted by Defendant's counsel, Ms. Cannon, and not by direct communication by Defendant to a probation officer.

E.   Defendant shall comply with each of the other conditions of her bond.


**SO ORDERED** this 22nd day of March, 2017.


WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE


16